Ewing, C. J.
The lessor of the plaintiff claims the premises in question, by virtue of a mortgage in fee. simple upon the said premises, dated 23d February 1818, from Cornelius Van Gieson, Adrian Van Gieson, and the defendant Simon Y, Vanness, to Adam Boyd, to secure the payment, on the first of May 1818, of a bond from them to him, of the same date, for $500; an as™ signrrient of the said bond and mortgage, to the lessor of the plaintiff, by the said Adam Boyd, on the 3d day of May 1825 j and also by virtue of two deeds, each for one moiety of the premises in question, with other lands, the one dated on the 27th and recorded on the 29th April 1825°, from the said Cornelius Van Gieson, to the lessor of the plaintiff, and the other from Adrian Van Giesoii, to him, dated on the 27th of April, but actually executed on the 28th of May 1825.
The defendant rests his defence upon a deed of conveyance, for the premises in question, with other lands, made by the sheriff of the county of Bergen, to Margaret Mead, dated 11 th July 1825, upon a sale on the 28 h May 1825, by virtue of an execution offieri facias, debonis et terris, returned to January term 1817, of the Court of Common Pleas of that county, levied ota the premises in question, with other lands, and issued upon a judgment signed on the 16th January 1817, infavor of the said Simon Y. Vanness, against the said Cornelius Van Gieson and Adrian Van Gieson, and assigned among other things by the said Simon Y. Vanness, to the said Margaret Mead,on the 2d of August 1822.
The fairness and validity of the mortgage in the bands of Adam Boyd ; its due assignment to the lessor of the plaintiff, and the default of payment of the money mentioned in it, are not made the subjects of controversy. It is clear, nor indeed did it seem on the argument to be disputed, that the plaintiff is entitled to recover upon the mortgage, unless the grounds of defence submitted on the part of the defendant may legally prevail against it.
1. In the first place, it is said that at the execution of the mortgage, Vanness had no estate in the premises. By the mortgage, he professes to convey, and thereby avers, that he held an estate in fee simple. An ancient rule of the common law, founded or clear and immutable principles of justice, forbids a party from alleging in contradiction of his own deed, or in opposition to a ".kina founded on such deed, that he was guilty of falsehood., *104 and had no estate or interest in the premises at the execution of the deed.
In Rawlyn’s case, 4 Co. 53, it was resolved that a lease, by indenture, made by o.ne Cartwright, when he had nothing in the premise demised, was, notwithstanding, good against him by conclusion. In Smith v. Stapleton, Plowd. 434, Plowden arguing for the plaintiff, for whom judgment was afterwards given, said9 “ inasmuch as the lease is by. indenture, both parties are concluded to say the contrary, but that the lessor had the land in possession to pass, and that it passed in possession according to the tenor of the lease.” In Palmer v. Ekins, 2 Lord Raymond, 1551, the same point is decided; and in Co. Lit. 476, the game doctrine is taught. In Jackson v. Bull, 1 John. Cases 90, Crabb did not get his deed until January 1776, but made deeds in the October and November preceding. The court said, he could never be permitted to claim in opposition to his deeds, by alleging that he'had then no estate in the premises.’ In Jackson v. Murray, 12 John. 204, the court said, {i if the plaintiff can recover, it must be on the principle, that when Russell conveyed to Beach, Danforth had not then conveyed to them; but Russell Cannot be allowed to say, that his deed to Beach conveyed no interest.” In Lessee of Cooper v. Galbreath, 3 Wash. Rep. 549, Justice Washington states, it is a principle, an element of the law, that a man cannot recover in ejectment, nor defend himself against his own covenant or grant. “ He is stopped by his own act from saying that his title was defective, when his deed professes to pass a good title.” In Den v. Brewer, Coxe 172, a defendant was held to be precluded from controverting the title of the plaintiff, by a recital in a mortgage he had made.
This principle is established and supported by a multitude of Other cases both ancient and modern.
The class of cases, which prove that a tenant may shew that the title of his landlord, claiming in ejectment, had expired after the demise, and before the commencement of the suit, have manifestly no analogy to the case before us. The distinction is so obvious as to require no illustration.
It results then, that between these parties, and in this easep the mortgage conclusively proves, that the defendant had an estate in the premises, and removes this obstacle out of the way. of the plaintiff.
*105 2. In the second place it is contended, on the part of the defendant, that the mortgage is defeated and rendered unavailable to the plaintiff, because the legal title to the premises has passed to, and become vested in, Margaret Mead, by the sale and conveyance of the sheriff, under the judgment obtained, and execution levied prior to the mortgage. But it is dear, that in this case, and between these parties, the defendant cannot avail himself of the effect and operation, whatever it may be, of that conveyance. The principle which answers the first objection yields its full force against this objection also.
Again. The defendant in respect to the assignee of this mortgage, stands on no more tenable ground than a mortgagor or a tenant of a mortgagor, who cannot give in evidence the title of a first mortgage, to bar the recovery of a second j and upon the principle that he is precluded from averring contrary to his owe act, that he had nothing in the land, when he took upon him to convey by the second mortgage. Buller N. P. 110. The very name principle forbids Vannesn from alleging, in this case, that when he made the mortgage, there was a judgment whereby his title might be incumbered or defeated. Moreover, Margaret Mead is not a party defendant in tilia cause; nor is it shewn, that Vanuess is a tenant under her j nor that he holds under her; nor that he came into possession under her; nor that he has attorned or attempted to attorn to her 5 nor that she had ever recognized him as holding possession for or under her ; nor that there is any privity or the slightest connexion between them, Without then at all, questioning the general rute that a defendant may set up an outstanding title, or enquiring into its qualifications and limitations, it is clear that this defendant, a mortgagor, cannot, as against his own mortgage, avail himself of the title of Margaret Mead, who is not shewn to have authorised him in any way to make use of it, and towards whom, for aught we have any right ¡0 know, the plaintiff when he seeks to enforce her claims may submit himself, in Doe v. Pegge, 1 T. R. 758, Lord Mansfield laid down a sound and incontrovertible rule, entirely just in itself, and pointedly applicable to the case before us. íS I found this point softied before I ci-.ms into this court, that the court never suffers a mortgagor, to set up the title of a third person against his mortgage * for he made the mortgage, *106 and it does not lie in bis mouth to say so, though such third person might, have a right to recover possession.”
■ 3. Another ground of defence is, that the plaintiff cannot sus® tain a recovery on the mortgage in this case, because having obtained the legal estate in the premises, by the assignment of the mortgage, and the equity of redemption or equitable estate, by the deeds from Cornelius Van Gieson and Adrian Van Gieson,_he has united in himself the legal and equitable estates and a merger has taken place. Assuming the position that a merger has occurred, upon the soundness of which I think it not necessary to pause to enquire, let us examine the consequences. What is merged ? The legal or the equitable estate ? The books cited by the counsel of the defendant, and all other of the few cases which are to be found on this head, say the equitable estate is merged. Now if by being merged, the estate so merged, is, as was insisted by the defendant’s counsel, extinguished and annihilated, it is seen that it is the equitable estate whose power, efficacy, existence has ceased. The legal estate by which the other is absorbed is not destroyed, nor even weakened by the addition, but remains available to all legitimate purposes ; and in the hands of the present plaintiff, an engine of recovery equally against the present defendant as antecedent to the accession j for it would he an extraordinary result, if the plaintiff holding the mortgage might recover, but adding the equitable to the legal estate should thereby be defeated. The truth however, is, that the terms extinguished, annihilated, are not perhaps the most happily chosen; and serve, without caution, to convey ideas somewhat inapt and inaccurate. They are indeed, sometimes used by high authority and, as intended, are doubtless correct. To some purposes when a merger occurs, both estates are extinguished or annihilated. The distinct separate existence of each is forever gone, nor can be by any possibility revived. The chemist may combine the elements of nature, exhibit them under a new form, and then by his mighty art, reproduce the original elements ; but the owner who has merged two legal estates, or an equitable and legal, although he may create new es tates, can never reproduce or revivify the old. The true idea oá merger consists in a thorough coalescence, an indissoluble union of the merging estates ; each still regaining its rights and advantages, or perhaps more properly speaking, each imparting to the *107 whole Its peculiar attributes. If lands were conveyed to A. for life, with remainder to B. for life, and remainder to C. in fee, and C. should, living A. acquire the estate of B. could he be disabled from recovering at the decease of A. ? Might another person take possession and hold against him during the life of B. i Would not this consequence necessarily follow, if the estate of B. were, in the popular sense, annihilated ?
From this view of the subject, from a proper understanding of the doctrine and nature of merger; from the consideration that an union or coalescence, not a destruction of rights is thereby effected ; - it clearly appears in my opinion, that the mortgage or legal estate in the present case, in the hands of the lessor of the plaintiff, is by the coveyance to him of the equitable estate, deprived of no part of its efficacy, in entitling him to recover against the present defendant the mortgagor.
Upon the argument, some very important questions were raised and discussed in reference to the title of Margaret Mead. In the view I take of the case, it is unnecessary to examine or decide them ; and it is well that we are not obliged to decide upon her rights in a case where she is not a party, nor, as far as we knoWj represented or defended before us.
Another objection to the recovery of the plaintiff, founded on the time of the demise, remains to be considered. The lease in the declaration, is stated to have been made on the 7tb day of July 1825, to hold from the 6th day of July then last past. The 8th day of July then last past, it is insisted, is the 6th day of July of the year 1824 ; and the plaintiff cannot therefore recovf er, because the commencement of the lease is prior to the accrual of the title of his lessor. This difficulty is readily dispelled by referring, as may be done, without any violation of either the Sense or the grammar, and jn perfect accordance with both; the words then last past, to the whole member of the sentence, the 6th day of July, instead of either the month or the day exclusively. Correctly taken, it is neither the month, July, nor the day, the 6tb, separately to which the reference is made, but both united, This will the more clearly appear by enquiring when last past ? The answer is not in July 1825, but on the 7th day of July 1825; and consequently, the day as well as the month, must be regarded. The 6th day of July then last past, is the 6th day of July 1825, and thus, properly understood, the objection loses ail its force...
*108 Upon the whole, I am of opinion, the plaintiff is entitled to recover.
Ford, J.
The plaintiff, in ejectment, laid his demise on the 7th day of July 1824, to hold from the 6th day of July then last past, and this was construed by the defendant to mean July then last past, that is July 1823, which was prior to the accrual of the plaintiff’s title, and therefore the defendant moved for a nonsuit. But if this reference is taken to the day last past, the month and year will remain right, and it is not an universal rule that relatives, or relative words, shall refer to the nearest antecedent ; instances to the contrary occur in the best of authors, as “the fruit of that forbidden tree whose mortal taste,” &c. If it may be understood either way, that one which renders this fictitious demise useful to the action should be adopted, rather than that which would destroy it. But, if this be otherwise, there is still no ground for a nonsuit, because the interest under a lease commences, both as to the title and mesne profits, from the time of making it; Adams 189, and the habendum may retrospect to any time, for the mere purpose of computation, as so many years from a certain nativity,- feast, or even eclipse; thus if alease be made in 1828, to hold from the year 1800 for 35 years, it is by computation a lease in interest for only 7 years. Sac. Ab. Leases, L. and the eases there cited. If the lessor had title at the time he made the lease, it would be valid from that time till the expiration of the term.
But the principal question was, whether Burhans had any title to the premises. Be claimed under a conveyance from Cornelius, and Adrian Yan Gieson, whose title to the premises, and whose deed to Burhans, as far as they had power to make it, were both admitted; but there was a judgment against them, (before they conveyed to Burhans,) in favor of Simon Y. Wanness; under which judgment their property was afterward taken in execution and sold and conveyed by the sheriff to Margaret Mead, as purchaser, which sale avoids any conveyance that it is ordinarily the power of the debtors to make. On the other hand the lien of this judgment was denied for several reasons; first, that ir was discharged of record before Burhans purchased; secondly, that it was fraudulent as against creditors and bona fide purchasers, and therefore void under the statute; thirdly, *109 that Simon Vanness assented to the sale to Bur'hans, and was m look to the purchase money in the hands of the Van Giesons for satisfaction of his judgment; and his suing out execution after such sale was a fraud.
First. The judgment in question was confessed in October 3816, and execution immediately levied on the land 5 it then lay dormant five years, till the 13th October 1821, when satisfaction was entered of record in the following words: “I do hereby acknowledge, that the plaintiff has received full satisfaction of the debt and costs mentioned in this judgment. Dated 13th October 1821, J. A. Boyd, attorney for plaintiff.” And it was three years and a half after this entry of satisfaction, that Burhans purchased of the defendants, in that suit, to wit, by deed of the 25th of April 1825. Several exceptions were th<m taken to the validity of this discharge, and the first was, that no payment of the debt had been proved. But these judgments would inflict double terror on purchasers if the plaintiff's acknowledgment on record was not sufficient evidence of satisfaction, as between him and strangers. The next exception was, that while Simon Y. Vanness was living in the Ccnnessee country, and absent from the state, John A. Boyd made this acknowledgment as his attorney without any authority for so doing. But the law authorises these acknowledgments to be made by attorney j and if one acts as such on record without authority, the principal has an undoubted remedy against him for the damages. On the other hand it might be impossible for a third person to prove this power between attorney and client, if one actually existed. But I think there was evidence enough in this case, both direct and circumstantial 5 for after this acknowledgment had been entered of record, when Simon Vanness was about to take the benefit of the act, he represented it to Mr. Vanhouten as a receipted judgment, and thereby recognized it himself as being discharged. It is also certain that he had notice of this discharge as far back as 1822, and yet made no complaint to the court against it or against Mr. Boyd, but suffered it to remain in full 'and undisputed validity for four or five years. It is a record of the Court of Common Pleas, and being neither vacated nor set aside by them, I think we are bound to treat it as verity, and to receive no averment against it. But supposing the judgment not satisfied of record, the plaintiff insists,
*110 Secondly. That it was fraudulent as against creditors and So-no. fide purchasers, and therefore void under the statute. The Van Giesons being indebted to sundry persons in more-money than they were able to pay, gave a bond and judgment to their brother-in-law, Simon Y. Vanness, for the large sum of $7000, without its appearing that they were indebted to him at the time, or for money lent or advanced, or upon any balance of accounts. The parties, at the time of confessing the judgment, declared that the intent and purpose of it was to prevent them from being harrassed by their creditors. When one of- those creditors'threatened to impeach it in the Court of Chancery, as being voluntary and fraudulent, Simon Y. Vanness virtually admitted the charge,, by expressing his belief that it would be set aside for that cause; and by way of preventing such a catastrophe, and in order to quiet that creditor, he actually advanced some money and assisted the Van Giesons to pay that debt; but these advances were not to half the amount of the judgment. It was argued that a judgment might be lawfully confessed as security for such moneys as might be afterwards advanced bin no such condition was annexed to this judgment; it was on the face of it for an absolute debt, and it was so represented to creditors, expressly for the purpose of delaying and hindering them. These circumstances would have led any honest jury to conclude that it was fraudulent. If such a judgment is not fraudulent the statute of frauds might as wéll be repealed. It is however valid as between the parties to it, and as against all the world except ereditors'and bona fide purchasers. It becomes therefore an important.question, whether Burhans was a bona fide purchaser; for if he appears to be such, this fraudulent judgment cannot be set up against him. The Van Giesons have parted with their title, and the question lies solely between Burhans and Vanness, whether the latter can enforce the judgment against him. The' case shews that Burhans knew of this judgment at the time of. purchase; but he also knew, that Vanness gave nothing for it, that it was merely intended to delay creditors, and though nothing was given for it at the time (which appears to have been either no secret or one badly kept) yet that Vanness had advanced some moneys subsequently to the confession, and as he held the judgment at his disposal, it was proper to confer with him about ■she purchase. He had power to sell the property himself, or to *111 relinquish the lien, such as it was, and allow the Van Giesons to sell it themselves. If he actually consented to their selling of the property to Burhans for a fair and full consideration, he shall not set up this covenous judgment to beguile and defraud a fair purchaser. Now that he recognised the right of the Van Giesons to sell the property, and complained of them for not doing so, is very apparent While he and Adrian Van Gieson were in the Lake country, they complained that Cornelius did not sell; this is testified by Simon’s son. They also complained of Marselis Van Gieson (who seems to have been the friend and agent of the whole concern) for not selling the land. To gratify their urgent desires, Marselis applied to Burhans to purchase it, and told him, that they had authorised him to sell. A negotiation immediately commenced about a price, and after going several times between Cornelius and Burhans, it was fixed at $50 an acre. Simon Y. Vanness was then consulted aiiout the price, and he returned for answer, that Cornelius must do as he pleased. After the bargain was completed ho ratified it, and advised them to give Burhans possession according to the contract Such is the testimony of Marselis Van Gieson the kindred, the relative, and it may not be too much to add, the agent of all persons, on that side of the bargain. The sale being thus effected, the money in part paid, the rest secured by articles and deeds delivered, Simon and Cornelius began to fall out about dividing the consideration money between them ? Simon wanted a few dollars more than Cornelius was willing to allow him, and a dispute ensued, on which Simon said he would resort back to his judgment for his money. Accordingly he caused the "tend to be sold by the sheriff, upon that old and dormant execution ; and Margaret Mead, his sister, who appears to be only the nominal assignee of the judgment, became the purchaser of the estate for $15} but Simon had the eontroul of it, his was the interest, he was to get the money from Burhans if lie could only get enough of it, and he was the person who had it sold on execution. Now the plaintiff, in a voluntary and fraudulent, judgment, cannot use it to set aside a fair sale to a third person, negotiated and ratified by his own procurement and consent, foj a fair and full consideration. It v/ould allow him to defraud a Iona fide purchaser by means of a covenous and fraudient judgment, and thug overturew the very intent of the statute of fraud;-. *112 Upon each of these grounds I think the lien of the judgment was dissolved.
But Burhans had another claiin to the premises, independently of all that goes before, as the assignee of a mortgage, in which Simon Y. Vanness was one of the .mortgagors j and so long as a mortgage remains unpaid, the mortgagor shall never be allowed to deny the title. An assignee, by taking an assignment, is allowed to keep the mortgage on foot, for his*' protection. The doctrine of merger cannot therefore apply to it. Nor would it mend the defendant’s case either way. If Burhans has a title, under the Van Gieson deeds, he is entitled to recover the lands; and if he has no title under their conveyancés he has no estate in which the mortgage can merge, and therefore it remains a title of itself. In every view of the case it appears to me that the plaintiff is entitled to recover.
Drake, J.
The lessor of the plaintiff derives title to the. premises in question, under deeds of conveyance, from Adrian Van Gieson and Cornfelius Van Gieson, who were once the undisputed owners of the same. But the Van Giesons had previously confessed a judgment to the defendant, upon which an execution had been sued out, and the property sold to one Margaret Mead, under whose title the defendant seeks to protect his possession.
Besides opposing several serious objections to this title, the plaintiff further shews, that, yet earlier than the entry of the said judgment, the Van Giesons, together with the defendant, executed a mortgage upon the same premises to one Adam Boyd, to secure the payment of a considerable sum of money; whicV mortgage had since been assigned, for a valuable consideration, to the lessor of the plaintiff. And he contends, upon well established principles, that Vanness, the defendant, having executed this'mortgage, should not be permitted to gainsay the title derived under it. To get clear of this obvious consequence, it is insisted, for the defendant, that Berhans, the lessor of the plaintiff, having previously purchased the equity of redemption, of the Van Giesons, this mortgage title united with and became merged in it, the moment it was assigned to him by Boyd. Questions involving the doctrine of merger arise between persons who have separate, but consistent, interests'or estates in the subject. of the *113 claim» if there be no extinction or merger of one of these interests or estates in the other, as, between the executor and heir, lo whom it is important to ascertain whether an inferior, or chattel, interest is extinguished : between heirs in the paternal and maternal lines s and between devisees of realty and of personalty, la this case, if, after the mortgage, and equity of redemption» had united in Burhans, his real estate by will, or otherwise, had passed to one person, and his personal estate to another, this question of merger would properly have arisen. But I see not how a stranger is to enquire into it. The whole title becoming united does not weaken, or destroy, the efficacy which any of Its component parts had as against strangers.
But in the present case, there is a another reason why the defendant cannot avail himself of this doctrine. He claims title under a judgment, and sheriff’s sale. There was a title passed by that sale, or there was not. If there was not, the plaintiff k; entitled to recover by virtue of the title derived under the deeds from the Van Giesons. If there was, if the equity of redemption was passed to Margaret Mead, it did not remain in the Van Giesons, and consequently was not conveyed by them to Bur~ bans. And if not conveyed to Burhans, his mortgage title could not sink and merge in if. It therefore exists, and is sufficient to enable the plaintiff to recover.
Judgment for plaintiff.